UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PANE RUSTICA, INC. MANGIO
SANO ENTERPRISES, Domestic
Corporation d/b/a Pane Rustica

    Plaintiff,

v.                                                                    Case No: 8:20-cv-1783-KKM-AAS

GREENWICH INSURANCE
COMPANY, a Foreign Corporation,

    Defendant.
_____/

## ORDER

Before the Court is Defendant Greenwich Insurance Company's Motion to Dismiss (Doc. 5), Plaintiff's Opposition and Memorandum of Law in Response (Doc. 15), and Defendant's Reply (Doc. 20). Upon review, the Court concludes that Defendant's motion should be granted because Plaintiff has not alleged a direct physical loss of or damage to its property and any potential coverage is expressly excluded if caused by a virus. Because further amendment would be futile, the complaint is dismissed with prejudice.

    **I.    BACKGROUND**

Greenwich Insurance Company (Greenwich) insured Plaintiff Pane Rustica, Inc. Mangio Sano Enterprises (Pane Rustica), a Tampa based restaurant company (Doc. 1-

1 at 1–2). The insurance policy (the Policy) provided coverage to Pane Rustica's restaurants located at 3225 S. MacDill Avenue, #119, and 1910 Ola Avenue. (Doc. 1-1 at 2). Specifically, the Policy provided coverage for loss of "Business Income (and Extra Expense)" when suspension of business operations is "caused by direct physical loss of or damage to property at premises" and attendant "loss or damage" is caused by the same. (Doc. 1-1 at 67).

Relatedly, the Policy included a "Civil Authority" provision allowing for coverage of loss of business income caused by actions of a civil authority:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Doc. 1-1 at 68).

Lastly, the Policy included an exclusion for loss due to virus or bacteria:

> We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(Doc. 1-1 at 81).

Pane Rustica submitted a claim seeking recovery for business income and extra expenses caused by state orders issued in response to the COVID-19 pandemic. (Doc. 1-1 at 3–4). Specifically, Pane Rustica claimed that the Hillsborough County Civil Authority Order dated March 27, 2020, and Florida Governor Ron DeSantis's Executive Order Number 20-71—both suspending on-premises food consumption—caused a loss of business subject to payment under the Policy. (Doc. 1-1 at 3–5). Greenwich denied coverage for the claim because (1) there was no physical loss or damage to the premises of the covered property and government action was not the result of physical damage; and (2) the Policy excluded coverage for loss of use, loss of market, acts or decisions of a governmental body, and loss or damage caused by a virus. (Doc. 1-1 at 244–45).

In this action, Pane Rustica brings claims for breach of contract and declaratory judgment to determine liability under the Policy. (Doc. 1-1 at 4–5). Pane Rustica's complaint does not include allegations that it was prevented from accessing the properties as a result of COVID-19 or related government orders and does not describe any physical loss or damage to the property. Greenwich moves to dismiss the complaint under Rule 12(b)(6) for failure to state a claim. Specifically, Greenwich argues that (1)

3

the virus exclusion precludes Pane Rustica's claims, (2) Pane Rustica's claims for Business Income and Extra Expense coverage require physical loss of or damage to the property, and (3) Pane Rustica's claims for Civil Authority coverage fail because there was no damage to property and Pane Rustica was not prohibited from accessing its property. (Doc. 5 at 7, 9, 15). The Court agrees. Accordingly, the motion to dismiss is granted.

## II. MOTION TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

Under Florida law, the interpretation of an insurance contract, including resolution of ambiguity, is a question of law. *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993). Like all contracts, interpretation of an insurance contract begins with "the plain meaning of the contract's text." *State Farm Mut. Auto.*

4

*Ins. Co. v. Menendez*, 70 So. 3d 566, 569 (Fla. 2011). "If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written." *Id.* at 569–70 (quoting *Travelers Indem. Co. v. PCR Inc.*, 889 So. 2d 779, 785 (Fla. 2004)). But the language of the policy is ambiguous if it is "susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage." *Id.* at 570 (quoting *Travelers Indem. Co.*, 889 So. 2d at 785). "A provision is not ambiguous, however, 'simply because it is complex or requires analysis.'" *Id.* (quoting *Penzer v. Trasnsp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010)).

As a threshold matter, the Court agrees with Greenwich that the virus exclusion precludes coverage for Pane Rustica's claim. The Policy excludes coverage "for loss or damage caused by or resulting from any virus, bacterium or other microorganism." (Doc. 1-1 at 81). That contract language is satisfied here: all loss stems from COVID-19, as both Governor DeSantis and Hillsborough County enacted the two orders suspending in-person dining solely to address the threat of the virus. *See* (Doc. 1-1 at 219 ("WHEREAS, Hillsborough County must continue to take emergency action to lessen the spread of COVID-19"); Doc. 1-1 at 239 ("WHEREAS, on March 9, 2020, I issued Executive Order 20-52 declaring a state of emergency for the entire State of Florida as a result of COVID-19")).

Pane Rustica argues that even if the Court finds that the virus exclusion applies, the loss is still covered because the virus and government orders are concurrent causes.

5

(Doc. 15 at 10). Under Florida law, "when independent perils converge and no single cause can be considered the sole or proximate cause," the concurrent cause doctrine applies. *Sebo v. Am. Home Assurance Co.*, 208 So. 3d 694, 697 (Fla. 2016). But when one peril can be discerned to "set the other in motion," that peril is "the cause to which the loss is attributable." *Id.* Here, the virus is clearly the peril that precipitated the government orders. Neither order would have existed but for the existence of the virus, and the virus is the proximate cause of the orders. Accordingly, the virus is the cause of the loss, and Pane Rustica's claims are excluded under the Policy. *See Edison Kennedy, LLC v. Scottsdale Ins. Co.*, No. 8:20-cv-1416-T-02SPF, 2021 WL 22314, at *8 (M.D. Fla. Jan. 4, 2021) (Jung, J.).

As confirmation of this interpretation, district courts around the country have almost universally dismissed with prejudice claims for loss due to COVID-19 shutdowns based on identical or substantially similar virus exclusions. *See, e.g., Mena Catering, Inc. v. Scottsdale Ins. Co.*, 1:20-cv-23661-BLOOM/Louis, 2021 WL 86777, at *4, 9 (S.D. Fla. Jan. 11, 2021) (Bloom, J.) (listing cases and dismissing claim under exclusion for "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease"); *Edison Kennedy, LLC*, 2021 WL 22314, at *7 (dismissing claim under exclusion "for loss or damage caused by or resulting from any virus . . . that induces or is capable of inducing physical distress, illness or disease"); *Mauricio Martinez, DMD, P.A. Allied Ins. Co. of Am.*, 483 F. Supp. 3d 1189, 1192 (M.D. Fla. 2020) (Badalamenti, J.) ("Because

6

Martinez's damages resulted from COVID-19, which is clearly a virus, neither the Governor's executive order narrowing dental services to only emergency procedures nor the disinfection of the dental office of the virus is a 'Covered Cause of Loss' under the plain language of the policy's exclusion."); *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, No. 20-1949, 2020 WL 7395153, at *8–9 (E.D. Pa. Dec. 17, 2020) (Savage, J.) (dismissing claim under identical virus exclusion for restaurants who were shut down as a result of COVID-19 shutdown orders). The Court concludes that this provision is not ambiguous and that the exclusion applies to the claim in this case.

Pane Rustica's claims for coverage under the Policy rely on the Business Income and Civil Authority provisions. But those provisions must be read in the light of the virus exclusion provision, which expressly excludes all losses caused by or resulting from a virus. Specifically, the virus exclusion "applies to *all coverage* under all forms and endorsements that comprise this Coverage Part or Policy, including . . . endorsements that cover *business income*, extra expense or *action of civil authority*." (Doc 1-1 at 81 (emphasis added)). This text thereby renders the virus exclusion issue dispositive. *See Mauricio Martinez*, 483 F. Supp. 3d at 1191–92 (concluding there was no coverage under the business income or civil authority provisions of an insurance policy where the virus excluded insurer liability for any loss or damage caused by a virus). Nonetheless, even if the virus exclusion provision did not apply, Pane Rustica's claims are not covered in the first instance under the Policy for the following two reasons.

7

First, Pane Rustica's claims are not covered under the Business Income provision because Pane Rustica did not allege *physical* damage to its property. Under the Policy, only loss of income due to the necessary suspension of operations caused by "direct physical loss of or damage to property" is covered. (Doc. 1-1 at 67). "A 'loss' is the diminution of value of something [ ]. *Loss*, Black's Law Dictionary (10th ed. 2014). 'Direct' and 'physical' modify loss and impose the requirement that the damage be actual." *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020) (alteration in original) (quoting *Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017)). "Courts across the country have held that [coverage for COVID-19 government shutdowns] does not exist where, as here, policyholders fail to plead facts showing physical property damage." *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, No. 8:20-cv-1605-T-30AEP, 2020 WL 5791583, at *4 (M.D. Fla. 2020) (Moody, J.) (citing, for example, *Turek Enters. v. State Farm Mut. Auto. Ins.*, No. 20-11655, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020)). Pane Rustica has alleged only economic damage, not physical damage; consequently, its claim is not covered. *See Mama Jo's*, 823 F. App'x at 879 (concluding that a business income claim for closures due to cleaning was not a loss that was both "direct" and "physical"); *see also Edison Kennedy*, 2021 WL 22314, at *5 ("Absent direct physical damage or loss, there is no covered cause of loss per the terms of the policies.").

Second, Pane Rustica argues that the Civil Authority provision requires only "damage" to a property within a mile of the covered property, not *physical* loss or

8

damage, such that the shutdown of two nearby restaurants establishes coverage. (Doc. 15 at 11–13). The terms of the Policy provide coverage for "damage to property other than property at the described premises" if and only if (1) "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority" and (2) "[t]he action of civil authority is taken in response to dangerous physical conditions resulting from the damage . . . or to enable civil authority to have unimpeded access to the damaged property." (Doc. 1-1 at 68). This provision requires damage to another property within one mile of the covered premises that causes a civil authority to prohibit access to the covered premises. *See Edison Kennedy*, 2021 WL 22314, at *7.

Pane Rustica's allegations on this score are again insufficient. To begin, the Civil Authority provision—similar to the Business Income provision—requires physical damage to a nearby premises. "To recover under the civil authority provision, tangible damage to a property other than the insured premises is required to satisfy the terms of the policies." *Edison Kennedy*, 2021 WL 22314, at *7 (interpreting a civil authority provision identical to this one). This interpretation is supported by a plain reading of the Policy which requires damage to *property*, not damage generally or economic loss, and which particularly addresses physical conditions and access to the damaged property. (Doc. 1-1 at 68).

Pane Rustica alleges that two other restaurants were shut down by the same government orders, (Doc. 1-1 at 4), not that they had dangerous physical conditions or had damage to their property. *Edison Kennedy*, 2021 WL 22314, at *7 ("Plaintiffs do not

9

satisfy the [civil authority] provision because the amended complaints do not allege any direct physical damage was caused to [the nearby property] or that any such damage also caused the denial of access to [the plaintiffs' properties]."). Moreover, even if Pane Rustica's interpretation was correct, it does not allege facts sufficient to meet the conditions of the provision. Pane Rustica never alleges it was denied access to its property or that access to the area surrounding the other two restaurants was denied because of any damage that those restaurants sustained. *See Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, 1:20-cv-22833-BLOOM/Louis, 2020 WL 6392841, at *8–9 (S.D. Fla. 2020) (Bloom, J.) (concluding that a civil authority provision was not satisfied where plaintiff did not allege their access to the premises was prohibited). Indeed, they were all shut down for the same reason: a government response to stop the spread of the COVID-19 virus. Finally, Pane Rustica does not allege "dangerous physical conditions" resulting from the damage to these restaurants or that the government ever sought access to them, both of which are required to qualify under the Civil Authority provision. Accordingly, that provision does not provide coverage for Pane Rustica's claims.

### III. CONCLUSION

Pane Rustica has failed to state claims upon which relief can be granted because the Policy does not provide coverage based on Pane Rustica's allegations. It is also apparent that amendment would be futile under these circumstances as any amendment would be insufficient as a matter of law. *See Burger King Corp. v. Weaver*, 169 F.3d 1310,

10


1320 (11th Cir. 1999). Accordingly, Defendant Greenwich Insurance Company's Motion to Dismiss (Doc. 5), is **GRANTED**. The Complaint (Doc. 1-1) is **DISMISSED with prejudice**. The Clerk of Court is directed to close this case and terminate any pending motions as moot.

    **ORDERED** in Tampa, Florida, on March 22, 2021.

_____
Kathryn Kimball Mizelle
United States District Judge